ROBERT S. GREEN (SBN 136183)
JAMES ROBERT NOBLIN (SBN 114442)
EVAN M. SUMER (SBN 329181)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA 94939
gnecf@classcounsel.com
Tel: (415) 477-6700
Fax: (415) 477-6710

ALICIA L. HINTON (SBN 292849)
**LAW OFFICE OF A.L. HINTON**
1616 W. Shaw Avenue, Suite B7
Fresno, CA 93711
alicia@alhintonlaw.com
Tel: (559) 691-6900
Fax: (559) 421-0373

JAMES C. STURDEVANT (SBN 94551)
**THE STURDEVANT LAW FIRM, APC**
4040 Civic Center Drive, Suite 200
San Rafael, CA 94903
jsturdevant@sturdevantlaw.com
Tel: (415) 477-2410
Fax: (415) 492-2810

*Attorneys for Plaintiff*
LARRY FACIO

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LARRY FACIO, individually and on behalf of those similarly situated,

Plaintiffs,

vs.

AMERICAN FIRST FINANCE, INC.

Defendant.

Case No.

**COMPLAINT**

1. Violation of Consumers Legal Remedies Act (Cal.Civ.Code § 1750, *et seq.)*;
2. Violation of Unfair & Deceptive Business Practices (Cal. Bus. & Prof. Code § 17200 *et seq*.);
3. Violation of Unruh (Cal.Civ.Code § 1801, *et seq.)*
4. Money Had and Received

**CLASS ACTION**
**DEMAND FOR JURY TRIAL**

1. Plaintiff LARRY FACIO, on behalf of himself and all others similarly situated, and demanding a trial by jury, complains and pleads on knowledge as to himself and his own acts and upon information, the investigation of counsel, and belief as to all other matters, as follows:

## A. INTRODUCTORY STATEMENT

2. Plaintiff Larry Facio ("Plaintiff Facio"), individually and on behalf of those similarly situated (collectively "Plaintiffs"), brings this lawsuit against Defendant American First Finance, Inc. ("AFF") which has entered into a scheme with California merchants whereby consumers are deceived into receiving loans from an unlicensed lender, AFF, in which the essential terms are undisclosed and interest rates exceed maximum statutory limits.

3. AFF is incorporated in Kansas, and at all times relevant to Plaintiffs' claims was not licensed to transact business in California in any form or fashion. On February 6, 2018, AFF registered with the Secretary of State to transact business in the State of California as a foreign corporation, and as of that date became qualified to transact business in California, but did not at any time acquire a financing license.

4. At all relevant times, AFF provided loans to California residents for the purchase of consumer goods at affiliated retail stores despite its failure to obtain a license to provide loans in California. At the time of filing this Third Amended Complaint, AFF continues to operate as an unlicensed lender in California.

5. Plaintiffs purchased goods and services from AFF affiliated businesses with the understanding that they would be making installment payments to the retail merchants. Without the Class Members' knowledge or consent, at the time of sale those businesses submitted the Class Members' personal information to AFF which then generated a financing agreement purporting to be between the merchants and the Class Members without proper disclosure of the financing terms and purporting to obligate consumers to make payments to AFF, which is not even a named party to the agreements.

6. Plaintiffs suffered damage in that their personal information was shared with AFF without permission and they paid for financing they did not request or agree to, and at undisclosed terms including an exorbitant interest rate. As a pattern and practice, AFF and its affiliate network

failed and continue to fail to adequately inform consumers concerning the nature of the transaction, including that they are entering into financing agreements at interest rates often exceeding 120%.

7. Plaintiffs seek declaratory relief that AFF Security Agreements are loans subject to California's Financial Code §22000 *et seq*., known as the California Finance Lenders Law; that AFF did not have the licensing required by the California Finance Lenders Law necessary to offer and fund loans in California; that AFF's Security Agreements are void and that AFF had no right to collect or receive any principal, charges, or recompense in connection with the transactions; and, that all payments received to date are to be refunded.

8. Plaintiffs seek to preliminarily and permanently enjoin AFF from engaging in the practices delineated in this Complaint which continue to injure and harm the members of the public who unwittingly purchase consumer goods and services subject to AFF loans made in violation of federal and state consumer protection statutes;

9. Plaintiffs seek an award of monetary damages, according to proof; available statutory or punitive damages, in an amount to be determined at trial; and, restitution to the Class for all principal, interest, charges, or recompense in connection with the transaction paid to AFF during the class period and disgorgement of all profits.

## B. JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to the "Class Action Fairness Act," 28 U.S.C. §§ 1332(d), 1435 ("CAFA"). At least one member of the proposed class is a citizen of a state other than where a defendant is incorporated and headquartered. The proposed class consists of more than 100 members. Further, the amount in controversy exceeds $5 million taking into account all damages and equitable relief on behalf of the proposed class, and excluding interest and costs.

11. California maintains a strong public policy to protect consumers from unfair and deceptive acts and practices and promote economic justice and security. California's consumer protection statutes are designed to help consumers both to avoid predatory transactions and unfair practices and to obtain legal relief if they are victimized or treated unfairly in the marketplace. Further, California supports an overall legislative policy designed to enable consumers and others

who may be in a disadvantageous contractual bargaining position to protect their rights through the judicial process.

12. The Consumers Legal Remedies Act ("CLRA"), Civ.Code § 1750, *et seq*. is one of the strongest consumer protection statutes in California. "The CRLA is a legislative embodiment of a desire to protect California consumers and furthers a strong public policy of this state. 'The CLRA was enacted in an attempt to alleviate social and economic problems stemming from deceptive business practices...' (citation)" *America OnLine, Inc. v. Superior Court (Mendoza),* (2001) 90 Cal.App.4th 1, 9-10. The CLRA's anti-waiver provision states: "Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." Civ.Code § 1751.

13. California's public policy is also aligned with the Congressional purpose underlying the Truth In Lending Act ("TILA"), 15 USC 1601 *et seq*., which is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit and to guard against the danger of unscrupulous lenders taking advantage of consumers through fraudulent or otherwise confusing practices."

14. "The [California Financing Law] 'shall be liberally construed and applied to promote its underlying purposes and policies,' which include protecting California borrowers, 'ensur[ing] and adequate supply of credit to borrowers in this state,' and 'develop[ing] fair and economically sound lending practices.' (*Fin. Code,* §22001, subd. (a).)" *The Commissioner of Business Oversight v. Sezzle, Inc.* (2019) 2019 Cal. Sec. Lexis 151, CFL File No.: 60DBO-104155.

15. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with California and/or Defendant otherwise purposely availed itself of the markets in California by providing financing for consumer goods in California, maintaining offices in California, employing workers in California, and advertising in California. Defendant's purposeful availment of the markets in California renders the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

16. Venue is proper under 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in the Northern District of California.

## C. THE PARTIES

### I. Plaintiff Class

17. The acts complained of herein occurred, at least in part, within the last four (4) years preceding the filing of this Complaint. During the relevant statutory period, Plaintiff LARRY FACIO and the Class Members were induced to purchase consumer goods and services from AFF retail associates under a scheme that precluded their access to AFF's Security Agreement and had no knowledge of the essential terms—including the interest rates—of those contracts.

18. At all times during the class period, Class Members were customers of AFF retail associates who unknowingly became customers of AFF. The Class was charged exorbitant interest on the loans funding these purchases of consumer goods, and when they attempted to contact the retail sellers, were informed that their loans had been "assigned" to AFF. The loan documents later provided by AFF to Plaintiffs demonstrate that the purchase contracts were never "assigned" but were computer generated on an AFF form obligating consumers to contact AFF alone regarding the terms of the loans.

### II. Representative Plaintiff, Larry Facio

19. At the time of his sales transaction, Plaintiff Larry Facio was living in and his permanent residence is in Sacramento County, California. On September 28, 2017, Facio purchased wheels and tires from Roseville Wheels & Tires aka California Wheels & Tires ("Roseville Wheels & Tires") in Roseville, California, totaling $2,292.00.

20. At the time of purchase Mr. Facio was neither informed that the sale was financed with AFF nor of the financing terms. Mr. Facio suffered financial damages as a result of AFF's failures to disclose the terms of the obligation. Had he known of the interest rates and other terms of the financing, Mr. Facio would have refused to complete the transaction. Mr. Facio brings this litigation on his own behalf as well as other similarly situated individuals.

21. During the Class Period (defined below) Mr. Facio paid 144.59% interest on his purchase made at an AFF affiliated business.

**III. Defendant**

22. **Defendant AMERICAN FIRST FINANCE INC. ("AFF")** is organized and incorporated under the laws of the State of Kansas with its principal place of business at 3515 N. Ridge Rd, Ste 200, Wichita, KS 67205.

23. Despite lacking a license to provide loans in California, AFF provides purchase money loans for the sale of consumer goods and services through retailers with whom AFF has a preexisting relationship. AFF promises almost instant credit approvals with little to no credit history. AFF provides loans of up to $5,000.00 for purchases at interest rates often exceeding 120%.

## D. FACTUAL ALLEGATIONS

**I. AFF's Wrongful Scheme for Providing Consumer Loans in California**

24. Despite lacking a license to provide loans in California, through the efforts of its network of retailers, AFF provides loans for the sale of consumer goods. Retailers comply with AFF's fraudulent and illegal scheme because the Retailers are able to increase sales by selling consumer goods or services to class members by offering an installment payment option that the Retailers do not otherwise have the ability to offer to customers who require or prefer a payment plan.

25. AFF targets its products to consumers with poor or little to no credit.

26. AFF promises almost instant credit approvals with little to no credit history.

27. AFF provides loans of up to $5,000.00 for purchases at interest rates often exceeding 120%.

28. AFF provides the loans through a standard "Security Agreement," differing only the interest rates and total amount of the loan based on the amount of the purchase and its evaluation of the borrower's credit rating.

29. AFF mischaracterizes its loans as after-the-fact assignments of retail installment sales contracts.

30. The California Finance Lenders Law looks to the actual substance rather than the form of the transaction, revealing the true nature of AFF financing as loans.

31. AFF's involvement with the merchants goes beyond that necessary to effectuate the purchase of credit sales, in that:

a. AFF recruits new merchants with the claim that merchants who offer AFF loans can "supercharge sales" and AFF decisions to finance loans will be "super fast!";

b. AFF enters into Merchant Agreements with retailers prior to consumers' contemplating a purchase of goods;

c. Merchants are required to create an online account with AFF prior to offering AFF loans to consumers;

d. AFF provides in-store marketing materials to merchants for AFF products, including a 90-day same as cash offer;

e. AFF provides credit applications and "security agreement" forms that merchants are required to use;

f. AFF provides in-person and online training to merchants on how to prepare and upload AFF forms to its website;

g. AFF provides merchants with a hyperlink to AFF's pre-approval process that can be, and often is, integrated into the merchants' own retail website;

h. AFF's loan agreement is a non-negotiable, clickthrough agreement, the terms of which are dictated by AFF, non-modifiable by the merchant and non-negotiable by consumers;

i. Throughout the consumer purchase transaction, the role of AFF and the terms of the transaction are not fully disclosed to the consumer;

j. AFF's retail partners are not true parties to the loan agreements;

k. AFF makes the sole determination of consumers' creditworthiness;

l. The Security Agreement states that the consumer's loan has been assigned to AFF, but there is no actual assignment;

m. AFF requires consumers to apply for the funds at the time of the retail sale transaction;

n. AFF dictates all financing decisions; and

o. AFF handles all administration of consumer loans.

32. AFF made and continues to make these loans in willful violation of California Finance Lenders Law and even if not in willful violation has had more than 60 days since notification of the error to notify the customer and correct the error.

**II. Facts as to Plaintiff Larry Facio**

33. On September 28, 2017, Facio purchased wheels and tires from Roseville Wheels & Tires in Roseville, California, totaling $2,292.00, and was not informed at the time of purchase that the sale was going to be financed with AFF and was not informed of any financing terms. Roseville Wheels & Tires told Facio that if the purchase price for the wheels and tires was paid in full within 100 days of purchase he would not pay any interest. Facio paid $800 toward the total purchase price on the date of sale and received a Work Order from Roseville Wheels & Tires showing a balance owing of $1,492.00. At the conclusion of the sale transaction, Facio was instructed to electronically sign the Security Agreement but the financing terms were not made visible to him. Unbeknownst to Mr. Facio,, American First Finance then debited twice monthly payments out of Mr. Facio's bank account.

34. Mr. Facio was not informed about AFF and believed that his payments would be made to Roseville Wheels & Tires. He was not shown the face of the computer to know what he was authorizing by e-signing on the small electronic pad.

35. Roseville Wheels & Tires presented Mr. Facio with a Work Order describing the wheels and tires, parts and labor charges, the tax, total charge and balance owed after payment of his $800 on the date of sale, paid by debit card. This is the only sales document provided to him by Roseville Wheels & Tires. A true and correct copy of the Work Order between Facio and Roseville Wheels & Tires is attached hereto as Exhibit "A."

36. Without Mr. Facio's knowledge, AFF electronically prepared a seven page "Security Agreement" which specified an annual percentage rate of 144.59%. Mr. Facio was not shown the "Security Agreement," did not sign it, and was not given a copy at the time of sale.

37. The form Security Agreement generated by AFF and used to collect funds from Mr. Facio is dated September 28, 2017 and states that it was assigned by Roseville Wheels to AFF, but there is no record of an actual assignment. AFF simply created the appearance of an assignment as cover for a loan that it was making directly to Facio using the retailer's business as the place where the loan is consummated.

38. On about October 6, 2017, and twice a month thereafter, AFF debited Mr. Facio's bank account $92.28.

39. About four days after purchasing the wheels and tires, Mr. Facio logged into his bank account to set-up electronic payments to the Roseville Wheels & Tires and was surprised and alarmed to see that an automatic payment was setup by American First Finance, a company he was not familiar with. He researched AFF's phone number, called AFF's customer service, and was surprised to be told that his electronic signature at the time he purchased the wheels and tires from Roseville Wheels & Tires authorized AFF to access to his bank account for payments on the amount financed. During that conversation, Mr. Facio requested that AFF withdraw sufficient funds to pay off the balance owed within the 100 days to avoid any interest charges, which the AFF employee assured him they would do.

40. Roseville Wheels & Tires' conduct in failing to disclose AFF as the lender for any discussion of billing/payments/collection/administration of the loans was uniform with respect to the Class.

41. Shortly after the 100 days following his purchase from Roseville Wheels & Tires, Mr. Facio logged onto his bank account and was upset to see that AFF did not withdraw sufficient funds to collect the balance on the purchase, but was only withdrawing the bi-monthly payments subjecting him to interest charges. Thereafter, Mr. Facio communicated with AFF in an attempt to resolve his complaints without success.

42. On about June 25, 2018, after making several prior unsuccessful demands of AFF to provide him with a copy of the loan agreement, Facio again called AFF to request a copy, which AFF finally provided to him by email. Mr. Facio was shocked to learn that the finance rate for the wheels and tires loan was 144.59% and that he would end up paying more than twice what they were sold for. He replied to AFF that he was not given a copy of the agreement or the "extensive payback schedule, a distinct violation of the terms and agreements." On June 29, 2018, American First Finance acknowledged receipt of Mr. Facio's complaint and again on April 9, 2019, American First Finance stated that it had "received your complaint." Plaintiff did not discover or have reason to discover the existence of potential claims against Defendant until June 24, 2018, at the earliest.

43. Mr. Facio then stopped all AFF withdrawals from his bank and refused to pay any additional money to AFF. A true and correct copy of the Security Agreement that AFF provided to Mr. Facio is attached hereto as Exhibit "B."

44. On about June 26, 2018, Mr. Facio filed a complaint with the Better Business Bureau against AFF, including claims that AFF failed to disclose the terms of financing and the144.59% interest rate.

45. On about June 28, 2018, Mr. Facio filed a complaint with the Consumer Financial Protection Bureau against AFF, including claims that AFF failed to disclose the terms of financing and 144.59% interest rate.

46. Beginning about September of 2018, AFF began a campaign to collect the loan balance from Mr. Facio, including an offer to resolve the AFF account by paying only 50% of the balance in a single payment or 60% of the balance in two payments. Believing that he was a victim of unscrupulous business practices, Mr. Facio refused to make any further payment to AFF. In about October of 2018, Mr. Facio began receiving notices from a debt collection company regarding the AFF loan.

47. Mr. Facio was not presented with the loan agreement or loan terms at any time prior to receiving the Security Agreement from AFF in June of 2018, and would not have purchased the goods if he had known of the true terms of the loan. Mr. Facio was never sent a

statement from AFF or notified by AFF in any way that it made the loan or what the loan terms were until he learned of AFF's existence by checking his bank account and thereafter contacted AFF via telephone. Mr. Facio attempted to resolve his concerns with AFF to no avail.

48. Pursuant to California law, AFF's involvement with Roseville Wheels & Tires in the transactions with Mr. Facio and the other members of the class goes beyond that necessary to effectuate the purchase of credit sales from Roseville Wheels & Tires, in that:

a. AFF recruited Roseville Wheels & Tires with the claims that AFF loans would increase sales and AFF would make its decisions to finance loans on the spot;

b. AFF entered into a Merchant Agreement with Roseville Wheels & Tires.

c. Prior to offering financing to Mr. Facio on September 28, 2017, Roseville Wheels & Tires was required by AFF to create an online account with AFF;

d. Through "Dealer Portal" on its website, AFF provided electronic versions of the credit applications and "Security Agreement" forms that Roseville Wheels & Tires is and was required to use for the transactions with Mr. Facio on September 28, 2017, and with other class members;

e. AFF provided and continues to make available online and in-person training to Roseville Wheels & Tires on how to prepare and upload AFF forms and customer information through AFF'ss website;

f. AFF's "Security Agreement" is a non-negotiable, clickthrough agreement, the terms of which are dictated by AFF, non-modifiable by the Roseville Wheels & Tires, and non-negotiable by consumers;

g. Roseville Wheels & Tires did not and does not fully disclose either the role of AFF or the complete terms of the transaction to Mr. Facio and the other class members;

h. AFF made the sole determination of Mr. Facio's credit worthiness on September 28, 2017 or dates prior, and of the other class members' credit worthiness throughout the class period;

i. AFF required Mr. Facio and each class member to apply to AFF for the funds at the time of the retail sale transaction(s);

j. AFF dictated all financing decisions with regard to Mr. Facio and each class member; and

k. AFF handled all administration of consumer loans for Mr. Facio's and each class members purchase from AFF's member-merchants' sales of consumer goods and services.

49. AFF made the loan to Mr. Facio on September 28, 2017, and the loans to the other Class Members during the Class Period in willful violation of California Finance Lenders Law.

50. AFF has continued to collect on the illegal loan over time. As recently as April 30, 2020, AFF stated to Mr. Facio that he continued to owe $1,591.47 on his account and that he should contact AFF's Special Resolution department to arrange payments.

## E. CLASS ALLEGATIONS

51. Plaintiffs seek to certify a statewide class comprising:

**All California residents who purchased consumer goods or services from AFF affiliated retail businesses and who AFF claims are or were bound to the terms of it's Security Agreement during the Class Period.**

52. The Class period begins on November 11, 2014, four years prior to the date of filing of the initial complaint in *Andrade v. American First Finance, Inc.,* Case No. 18-cv-6743-SK, and runs through the date of class certification ("Class Period").

53. This action has been brought and may properly be maintained as a class action, pursuant to the provisions of FRCP 23.

a) **Numerosity:** The Plaintiff Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case. The number of class members is estimated to be over 120,000 California consumers. AFF has sold and continues to sell to class members hundreds of Financed Products daily in California and throughout the United States. Thus the class is so numerous as to make joinder impracticable, if not impossible.

b) **Common Questions Predominate:** AFF has acted (by selling Financed Products) and refused to act, on grounds generally applicable to the class. These common issues of fact and law predominate over any arguable individualized issues.

Common issues include:

i) Whether AFF lacked a license to provide consumer loans in California at the time it made the consumer loans to the Class;

ii) Whether AFF's representations regarding the terms of sale of financed products were false and misleading, and unlawfully, unfairly, fraudulently, or unconscionably deceived class members into believing that their purchase agreements were with the individual merchant, when they were not;

iii) Whether AFF's Security Agreements with the Class are void for the reason that AFF does not have a California lender's license;

iv) Whether AFF's scheme of marketing financial products indirectly to consumers without their knowledge  is unfair, fraudulent, and unconscionable;

v) Whether AFF's scheme of marketing financial products indirectly to consumers witthout their knowledge violates the California Consumers Legal Remedies Act, Civ.Code §1750 *et seq.*;

vi) Whether AFF's scheme of marketing financial products indirectly to consumers witthout their knowledge violates the Truth in Lending Act, 15 USC 1601 *et seq.*;

vii) Whether the terms of the loans made by AFF are unconscionable; and, Whether the class has been harmed or damaged and, if so, the appropriate measure of damages, including the nature of the equitable relief to which the class is entitled.

c) **Typicality** Plaintiff's claims are typical of the claims of the other members of the class because Plaintiff's and all of the class members' damages arise from and were caused by purchasing consumer goods financed by AFF. As a result, the facts and the law regarding AFF's alleged wrongful conduct are identical for Plaintiff and all of the class members.

/////

d) **Adequacy:** Plaintiff will fairly and adequately protect the interests of the members of the class, and Plaintiff has no interests that are contrary to or in conflict with those of the class he seeks to represent. Plaintiff has retained competent counsel experienced in class action litigation to prosecute this action vigorously.

e) **Superiority:** A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impractible. The disposition of Plaintiff's claims in a class action will benefit both the parties and the Court, because Plaintiff's claims are identical to those of the proposed class and claims and defenses by the representative party are identical. Class action treatment will permit a large number of similarly situated persons to prosecute relatively small common claims in a single forum simultaneously without duplication of expending personal and Court resources in individual actions. Furthermore, the harm and damage suffered by each individual member of the class may be relatively small, the burden of individual litigation make it difficult or impossible for individual members of the class to redress the wrongs done to them. Additionally, important public interest will be served by addressing the matter as a class action, while individualized litigation would present the potential for inconsistent or contradictory judgments, which would establish incompatible standards of conduct for the party opposing the class and would lead to repetitious trials of the numerous common questions of facts and law.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Proper and sufficient notice of this action may be provided to the class members using AFF's electronic database of customer information and any other customer contact information in AFF's possession or control.

55. Plaintiffs have suffered irreparable harm and damages as a result of AFF's wrongful conduct as alleged herein. Absent a representative action, Plaintiffs will continue to suffer losses, thereby allowing these violations of law to proceed without remedy.

/////

/////

/////

**FIRST CAUSE OF ACTION**

**(Violation of the Consumers Legal Remedies Act,**

**California Civil Code § 1750 et seq.)**

56. Plaintiffs incorporate by reference the foregoing allegations.

57. Plaintiffs are "consumers" as defined by Civil Code §1760(d).

58. AFF is a "person" providing "goods" and "services" (services means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods) to "consumers" as part of a "transaction" as defined in Civil Code § 1761(a), (b), (c), (d) and (e).

59. The Consumers Legal Remedies Act applies to AFF's conduct because it covers transactions that are intended to result or that actually resulted in the sale or lease of goods and services to consumers. This district is the proper venue for this action as AFF is doing business within the Northern District of California.

60. Defendant has a duty to disclose the terms of sale but refused and failed to do so. Defendant misrepresented the terms of sale, and concealed and failed to disclose the true terms of sale. As the originator of the sales contracts, AFF's practices allowed it to charge exorbitant interest that remained undisclosed to the Plaintiff and class members unless and until they directly contacted AFF of which they had no knowledge at the time of sale. As the Plaintiff and class members were ignorant of the role of AFF in their purchases, they remained ignorant of the terms of those purchases.

61. By engaging in the misrepresentations, concealments, and false statements alleged above, Defendant violated Civil Code § 1770(a)(2), (3), (5), (7), (9), (13), (14), (16) and (19).

62. Defendant engaged in the acts and practices herein alleged as part of a pattern, plan, and scheme directed at Plaintiff and similarly-situated members of the public, with the intent to deceive and induce the purchase of consumer goods and services at undisclosed and unconscionable interest rates and other loan terms, and increase the cost of those goods and services to the benefit of Defendant, and to the monetary detriment of Plaintiff and the public.

63. Plaintiff Facio complied with all obligations required under Civil Code § 1750, *et seq.*, including requesting that Defendant cure or correct the violations 30 or more days prior to the filing of this action. Plaintiff Facio is within the class identified in his formal notice. As of the time of filing, Defendant failed or refused to correct or cure the violations alleged herein.

64. Plaintiff Facio also notified Defendant of the particular alleged violations of § 1770, *et seq.*, and demanded that it correct or cure the violations set for herein. The notice was given in writing and sent by certified mail, return receipt requested, to the place where the transaction occurred or to the Defendant's principal place of business. Defendant failed to correct or cure the violations asserted by Plaintiff within thirty days.

65. As a result of said violations, Plaintiff and class members have suffered and continue to suffer actual damage, incidental and consequential damages, and request damages, restitution, injunctive relief, and attorney's fees and costs according to proof pursuant to California Civil Code § 1780.

66. Defendant committed the above acts willfully, fraudulently, oppressively, maliciously, and with intent to injure and damage Plaintiff and class members, thus allowing punitive damages, according to proof.

**SECOND CAUSE OF ACTION**

**(Violation of the Unfair Competition Law,**

**California Business and Professions Code § 17200 et seq.)**

67. Plaintiffs incorporate by reference the foregoing allegations.

68. Under the Unfair Competition Law ("UCL"), unfair competition includes any "unlawful," "unfair," or "fraudulent" business act or practice.

69. The UCL authorizes equitable relief for violations, under Bus. & Prof. Code § 17203.

70. Beginning in November 2014 Defendant committed acts of unfair competition, as defined by, and in violation of Bus. and Prof. Code § 17200 by:

a. providing loans to California consumers without a valid license to do so;

b. failing to disclose finance terms at the time of sale;

c. concealing exorbitant and unconscionable interest rates and other loan terms;

d. refusing and failing to provide consumers with a copy of the Security Agreement;

e. failing to notify consumers where to obtain loan and financing information;

f. misleading consumers as to the existence of financing by AFF;

g. willfully charging, contracting for, or receiving amounts not authorized by the California Lender Finance Law, Cal. Fin. Code §22000 *et seq*.

h. failing to correct its violations of the California Lender Finance Law within the statutorily prescribed period; and,

i. failing to provide meaningful disclosure of financing provisions in violation of the Truth in Lending Act, ("TILA"), 15 USC 1601 *et seq.*, including improper disclosure of the amount financed, finance charge, payment schedule, total of payments, annual percentage rate, and security interest disclosures.

71. Defendant's policies and practices are unlawful, unfair, and fraudulent, and likely to mislead the general public and, consequently, constitute an unlawful, deceptive, and fraudulent business act or practice within the meaning of Bus. and Prof. Code § 17200.

72. The above acts and practices violate Business & Professions Code § 17200, *et seq*. in that they are unlawful, unfair, and fraudulent.

73. As a direct result of the aforementioned acts, Defendant received and continues to hold ill-gotten gains belonging to Plaintiff and members of the class Plaintiff and members of the class seek to enjoin Defendant from engaging in said practices which will continue to injure and harm the members of the public who unwittingly purchase consumer goods without disclosure of AFF's financing unless and until enjoined from doing so by this Court. Plaintiffs also seek restitution of all money and property unlawfully obtained by Defendant from Plaintiffs together with attorneys' fees and costs according to proof.

/////

/////

**THIRD CAUSE OF ACTION**

**Pled In The Alternative**

**(Violation of the Unruh Act, Civil Code § 1801, *et seq*. on behalf of the Class)**

74. Plaintiffs incorporate by reference the foregoing allegations.

75. Plaintiffs plead this cause of action for violation of the Unruh Act in the alternative should there be a determination in this action that Defendant AFF does not provide consumer loans that require licensure in California as described throughout this Complaint.

76. Plaintiffs and the Plaintiff Class are "retail buyers" of "goods" under a "retail installment contract" as those terms are defined by Civil Code §§ 1802.4, 1802.1, 1802.6.

77. AFF is a "person" and "retail seller" in the business of selling goods or furnishing services to retail buyers as defined in Civil Code §§ 1802.15 and 1802.3.

78. AFF is a "holder" who acquired the retail installment contract or installment account executed, incurred or entered into by a retail buyer, and/or the financing agency or other assignee of the installment contract or account, as defined in Civil Code § 1802.13.

79. Defendant has a duty to disclose the terms of sale in a single document that contains the entire agreement of the parties with respect to the cost and terms of payment for the goods and services and other evidences of indebtedness between the parties relating to the transaction. Defendant only provided a bill of sale on the date of purchase and refused and/or failed to provide the associated retail installment contract until many months later. (Civ. Code §1803.2.)

80. Defendant has a duty to disclose the true terms of sale but refused and failed to do so, including:

a. failing and/or refusing to provide the terms of sale on the bill of sale and misrepresenting the terms of sale on the retail installment contract (Civ.Code §1803.3.);

b. failing and/or refusing to include a description of the goods or services sufficient to identify them on the retail installment contract (Civ.Code §1803.3(a));

c. failing and/or refusing to deliver to the buyer at the time of the buyer's signature a legible copy of the contract (Civ.Code §1803.7);

d. failing and/or refusing to disclose to the buyer before the first transaction is made on a retail installment contract mandatory disclosures in a single written statement (Civ.Code §1810.1); and

e. failing and/or refusing to deliver to the buyer for each billing cycle a statement setting forth mandatory disclosures regarding the account balances, finance terms and charges, and payments applied (Civ.Code §1810.3).

81. As the originator of the sales contracts, AFF's practices allowed it to charge and collect exorbitant interest that remained undisclosed to the Plaintiffs and the class unless and until class members directly contacted AFF of which they had no knowledge at the time of sale. As the Plaintiff and class members were ignorant of the role of AFF in their purchases, Plaintiff and class members remained ignorant of the terms of those purchases and rights under the contract.

82. Defendant engaged in the acts and practices herein alleged as part of a pattern, plan, and scheme directed at Plaintiff and similarly-situated members of the public, with intent to deceive and induce the purchase of consumer goods and services at undisclosed and unconscionable interest rates, and increase the cost of those goods to the benefit of Defendant, and to the monetary detriment of Plaintiff and the public.

83. Plaintiff requested that Defendant cure or correct the violations 30 or more days prior to the filing of this action, which Defendant failed or refused to do.

84. Because Plaintiff and class members were not shown and did not receive a copy of the retail installment contract, they were not aware of nor did they consent to terms under the contract, including the pre-dispute resolution procedure and arbitration provision.

85. As a result of said violations, Plaintiffs have suffered and continue to suffer actual damage, incidental and consequential damages, and request restitution, recovery of finance charges and any delinquency, collection or other allowable fees imposed under the contract (Civ.Code §1812.7), plus attorney's fees and costs according to proof. (Civ.Code §1811.1 and Code Civ. Pro. §1021.5.)

86. Defendant committed the above acts willfully, fraudulently, oppressively, maliciously, and with intent to injure and damage Plaintiff and class members, thus allowing the

buyer to recover an amount equal to three times the total of the finance charges and any delinquency, collection, extension, deferral or refinance charges imposed, contracted for or received, according to proof. (Civ. Code §1812.9.)

**FOURTH CAUSE OF ACTION**

**(Money Had and Received)**

87. Plaintiffs incorporate by reference the foregoing allegations.

88. AFF received money belonging to Plaintiff and class members when it electronically transferred Plaintiff's and class members' money from their bank accounts. AFF benefited from the receipt of Plaintiff's and class members' money and retained it. AFF is obligated to make restitution to Plaintiff and class members for their purchases of financed products.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff prays that the Court:

1. Certify this matter as a class action with the class defined as set forth above, appoint Plaintiff Larry Facio as representative of the Class, and appoint his attorneys as Class Counsel;

2. Declare that AFF's Security Agreements are loans subject to the California Finance Lenders Law;

3. Declare that AFF did not have the licensing required by the California Finance Lenders Law necessary to offer, make and fund loans in California;

4. Declare that AFF's Security Agreements are void and that no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction; and all payments received to date are to be refunded;

5. Preliminarily and permanently enjoin AFF from engaging in the practices delineated in the Complaint which continue to injure and harm the members of the public who unwittingly purchase consumer goods subject to AFF loans made in violation of federal and state consumer protection statutes;

/////

6. Enter an order for restitution to the Class for all principal, interest, charges, or recompense in connection with the transaction paid to AFF during the class period and disgorgement of all profits;

7. Award monetary damages, including incidental and consequential damages, according to proof;

8. Award all statutory, treble, or punitive damages available under the law;

9. Award Plaintiffs and those similarly situated, reasonable attorneys' fees and costs of suit; and,

**10.** Award Plaintiff and those similarly situated such other and further relief as the Court may deem appropriate, just, and proper.

DATED: October 20, 2021

**GREEN & NOBLIN, P.C.**

By: /s/ *Robert S. Green*
ROBERT S. GREEN

James Robert Noblin
Emrah M. Sumer
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

Alicia L. Hinton
**LAW OFFICE OF A.L. HINTON**
1616 W. Shaw Avenue, Suite B7
Fresno, CA 93711
Telephone: (559) 691-6900
Facsimile: (559) 421-0373
Email: alicia@alhintonlaw.com

James C. Sturdevant
**THE STURDEVANT LAW FIRM, APC**
4040 Civic Center Drive, Suite 200
San Rafaelo, CA 94903
Telephone: (415) 477-2410
Facsimile: (4154) 492-2810
Email: jsturdevant@sturdevantlaw.com

Attorneys for Plaintiff,
LARRY FACIO