United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LARRY FACIO,<br><br>    Plaintiff,<br><br>  v.<br><br>AMERICAN FIRST FINANCE, INC.,<br><br>    Defendant. | Case No. 21-cv-08184-SK<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Regarding Docket Nos. |

   This matter comes before the Court upon consideration of the motion to compel arbitration filed by Defendant American First Finance, Inc. ("AFF").  Having carefully considered the parties' papers, relevant legal authority, and the record in the case, and having had the benefit of oral argument, the Court hereby GRANTS AFF's motion for the reasons set forth below.

## BACKGROUND

   On September 28, 2017, Plaintiff purchased wheels and tires from Roseville Tires & Wheels LLC ("Roseville").  Plaintiff paid $800 towards his purchase and financed the remaining balance of $1,492.  (Dkt. No. 1 (Compl.), ¶ 33.)  When he purchased the wheels and tires, Plaintiff and Roseville signed a Security Agreement.  The Security Agreement signed by Plaintiff and Roseville included the following arbitration provision:

> **AGREEMENTS FOR RESOLVING DISPUTES; CERTAIN DEFINITIONS**
>
> The Pre-Dispute Resolution Procedure, Arbitration Provision and Jury Trial Waiver set forth below govern "Claims" you assert against us or any "related party" of ours and "Claims" we or any related party assert against you. . . . .The term "Claim" means any claim, dispute or controversy between you and us (or our related parties) that arises from or relates in any way to this Agreement or any services you request or we provide under this Agreement ("Services") . . . ."Claim" is to be given the broadest possible meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims, and claims based

on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, negligence, fraud or other intentional wrongs) and equity.  It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief.  Notwithstanding the foregoing, "Claim" does not include any individual action brought by you in small claims court or your state's equivalent court, unless such action is transferred, removed, or appealed to a different court. . . .

**PRE-DISPUTE RESOLUTION PROCEDURE**

**Before either you, we or any related party commences RIGHT TO REJECT ARBITRATION.**  If you do not want this Arbitration Provision to apply, you may reject it within 30 days after the date of this Agreement by delivering to us at American First Finance . . . .

**1.      ARBITRATIONELECTION.**      A Proceeding may be commenced after the Complaining Party complies with the Pre-Dispute Resolution Procedure.   The Complaining Party may commence the Proceeding either as a lawsuit or arbitration by following the appropriate filing procedures for the court or the arbitration administrator selected by the Complaining Party in accordance with this Section 2.  If a lawsuit is filed, the Defending Party may elect to demand arbitration under this Arbitration Provision of some or all of the Claims asserted in the lawsuit.  To avoid piece-meal Proceedings to the extent possible, the Complaining Party must assert in a single lawsuit or arbitration all of the Claims of which the Complaining Party is aware and the Defending Party must demand arbitration with respect to all or none of the Complaining Party's Claims.  Also, if the Complaining Party initially asserts a Claim in a lawsuit on an individual basis but then seeks to assert the Claim on a class, representative or multi-party basis, the Defending Party may make such a demand.  A demand to arbitrate a Claim may be given in papers or motions in a lawsuit.  If you demand that we arbitrate a Claim initially brought against you in a lawsuit, your demand will constitute your consent to arbitrate the Claim with the administrator of our choice, even if the administrator we choose does not typically handle arbitration proceedings initiated against consumers.   Any arbitration Proceeding shall be conducted pursuant to this Arbitration Provision and the applicable rules of the arbitration administrator in effect at the time the arbitration is commenced.   The arbitration administrator will be the American Arbitration Association ("AAA") . . .; JAMS, . . .; or any other company selected by mutual agreement of the parties.  If both AAA and JAMS cannot or will not serve and the parties are unable to select an arbitration administrator by mutual consent, the administrator will be selected by a court. Notwithstanding any language in this Arbitration Provision to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any arbitration administrator that has in place a formal or informal policy that is inconsistent with the Class Action and Multi-Party Claim Waiver.  The arbitrator will be selected under the administrator's rules, except that the arbitrator must be a lawyer with at least ten years of experience or are tired judge unless the parties agree otherwise.

> **2.     NON-WAIVER.** Even if all parties have elected to litigate a Claim in court, you or we may elect arbitration with respect to any Claim made by a new party or any new Claim asserted in that lawsuit (including a Claim initially asserted on an individual basis but modified to be asserted on a class, representative or multi-party basis), and nothing in that litigation shall constitute a waiver of any rights under this Arbitration Provision.  This Arbitration Provision will apply to all Claims, even if the facts and circumstances giving rise to the Claims existed before the effective date of this Arbitration Provision.

(Dkt. No. 34-2 (Declaration of Jeffrey A. Topor), Ex. B) (emphasis in original).  The Security Agreement further states:

> **Notice of Assignment:** We have assigned this Agreement and any of our rights under it, including without limitation, the right to receive payments, to [AFF] . . ., the Assignee . . . . That assignment is made under the terms of a separate written agreement.  You must make all payments under this Agreement to Assignee at its address.

(*Id.*) (emphasis in original).

Previously, on August 21, 2017, AFF and Roseville signed a Retail Installment Sales Contract Program Agreement ("Retail Installment Sales Agreement") which states, in pertinent part:

> Subject to the terms and conditions of this Agreement, during the term of the Program, Seller hereby offers to sell to Purchaser certain credit sales contracts originated by Seller as seller/creditor that involve the credit sale of Products to Customers. . . . Once a Contract is purchased by and assigned to Purchaser, Seller will cease for all purposes to have any security rights and interest in the Contract and in the Product.
>
> . . . Purchaser will purchase any contract that is presented to Purchaser and Purchaser approves, in its discretion, subject to all supporting documents being provided.
>
> . . .
>
> . . . Seller will accept applications for credit purchases from Seller's Customers, and if Seller desires to sell and assign a Contract to Purchaser, Seller will promptly transmit the Customer's completed application to Purchaser electronically . . . .
>
> . . . If Purchaser approves the Customer's credit application, Purchaser will notify Seller of its approval, and Seller will then notify the Customer. . . .

(Dkt. No. 34-2, Ex. C at §§ 1.1, 1.2, 2.2.)  AFF and Roseville signed the Retail Installment Sales Agreement on August 21, 2017.)

In his deposition, John Reginal Britt on behalf of AFF identified what he called the

"merchant agreement of Roseville" as the separate agreement under which the assignment was made. (Dkt. No. 34-2, Ex. D at 25:1-26:1.) Britt testified that the "merchant agreement" or Retail Installment Sales Agreement "outlines the terms at which the assignment occurs." (*Id*. at 30:14-21.). Britt further explained in his declaration:

> 2.      AFF purchases retail installment contracts from merchants such as Roseville Wheels . . . who assign their rights under the retail installment contracts to AFF as part of the purchase process. Customer payments are thereafter made directly to AFF in accordance with the governing contractual terms.
>
> 3.      To facilitate these purchases, AFF enters into retail installment sales contract program agreements ("merchant agreements") with its merchants that govern the terms for the purchase of these contracts. These merchant agreements also provide the terms governing how a merchant, such as Roseville, will assign its interest under the contracts to AFF.
>
> . . .
>
> 6.      Roseville assigned [Plaintiff's] Security Agreement to AFF on September 28, 2017 as reflected on the last page of the Security Agreement.
>
> 7.      The assignment of security agreements between Roseville and AFF, including [Plaintiff's] Security Agreement, is governed by the terms set forth in Roseville's Merchant Agreement.
>
> 8.      Pursuant to these terms, Roseville electronically transmitted [Plaintiff's] completed application to AFF on or about September 23, 2017.
>
> 9.      AFF approved [Plaintiff's] application.
>
> 10.     Pursuant to the terms of the Merchant Agreement, Roseville transmitted the executed Security Agreement to AFF on or about September 28, 2017.
>
> 11.     AFF agreed to purchase and accepted the assignment upon receipt of the fully executed Security Agreement on September 28, 2017. . . .

(Dkt. No. 30-1.)

In a supplemental declaration, AFF explains that:

> 2.      AFF purchases retail installment contracts from merchants such as Roseville . . . who assign their rights under the retail installment contracts to AFF as part of the purchase process. . . .
>
> 3.      To facilitate these purchases, AFF enters into retail installment sales contract program agreements ("merchant

United States District Court
Northern District of California

agreements") with its merchants that govern the terms for the purchase of these contracts.  These merchant agreements also provide the terms governing how a merchant, such as Roseville, will assign its interest under the contracts to AFF.

. . .

7.     The assignment of security agreements between Roseville and AFF, including [Plaintiff's] Security Agreement, is governed by the terms set forth in Roseville's Merchant Agreement.

8.     Pursuant to these terms, Roseville electronically transmitted [Plaintiff's] completed application to AFF on or about September 23, 2017.

9.     AFF approved [Plaintiff's] Application.

10.    Pursuant to the terms of the Merchant Agreement, Roseville transmitted the executed Security Agreement to AFF on or about September 28, 2017.

11.    AFF agreed to purchase and accepted the assignment upon receipt of the fully executed Security Agreement on September 28, 2017. . . .

(Dkt. No. 34-1 (Declaration of Patrick Christen).)

## ANALYSIS

### A.     Legal Standard Applicable to Motions to Compel Arbitration.

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement.  *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); 9 U.S.C. § 4.

The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order

arbitration.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).  The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms."  *Mastrobuono v. Shearson Lehman Hutton. Inc.*, 514 U.S. 52, 53-54 (1995).  The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985) (quotations omitted).

Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract.  *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion.").  Thus, as with any contract an arbitration agreement is "subject to all defenses to enforcement that apply to contracts generally."  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *see also AT&T Mobility v. Concepcion,* 563 U.S. 333, 339 (2011) (The FAA "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or derive their meaning from the fact that an agreement to arbitrate is at issue.") (internal citation and quotation marks omitted).

A party seeking to compel arbitration must prove by a preponderance of the evidence the existence of an arbitration agreement, and a party opposing arbitration bears the burden of proving by a preponderance of evidence any fact necessary to its defense.  *Olvera v. El Pollo Loco, Inc.,* 173 Cal.App.4th 447, 453 (2009) (citing *Rosenthal v. Great Western Fin. Securities Corp.,* 14 Cal.4th 394, 413 (1996)).

**B.**     **AFF's Motion to Compel.**

    **1.**     **Assignment.**

Plaintiff does not dispute whether he signed an arbitration agreement, but rather whether Roseville effectively assigned the arbitration agreement to AFF.[1]  Whether Roseville effectively

---

[1] Plaintiff does argue briefly the mechanism to obtain his signature on the Security Agreement, DocuSign, did not allow for him to review the contract terms before signing, however

United States District Court
Northern District of California

assigned the Security Agreement with the arbitration provision to AFF is a matter of intent. *Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Superior Ct.*, 46 Cal. 4th 993, 1002 (2009) ("It is sufficient if the assignor has, in some fashion, manifested an intention to make a present transfer of his rights to the assignee.").  "[N]o particular form of assignment is necessary[.]" *Cockerell v. Title Ins. & Tr. Co.*, 42 Cal. 2d 284, 291 (1954); *see also Swing v. Lingo*, 129 Cal. App. 518, 523 (1933) ("[I]n the absence of a statute requiring that an assignment be in writing it is immaterial whether it is made orally or by writing.").  AFF bears the burden of proving the asserted assignment.  *Id.* at 292.

The Court finds that AFF met its burden to prove assignment of the arbitration agreement from Roseville to AFF.  On August 21, 2017, AFF and Roseville signed the Retail Installment Sales Agreement that established the framework and terms for Roseville to assign credit sales contracts with customers to AFF.  (Dkt. No. 30-1, ¶¶ 2, 3, 7; Dkt. No. 34-1, ¶¶ 2, 3, 7, 8; Dkt. No. 34-2, Ex. C, Ex. D at 25:1-26:1, 30:14-21.)  After Plaintiff and Roseville executed the Security Agreement, Roseville electronically transmitted the Security Agreement to AFF.  (Dkt. No. 30-1, ¶ 8; Dkt. No. 34-1, ¶ 8.)  The Security Agreement provides it was assigned "*under the terms* of a separate written agreement."  (Dkt. No. 34-2, Ex. B (emphasis added).)  AFF then approved Plaintiff's application.  (Dkt. No. 30-1, ¶ 9; Dkt. No. 34-1, ¶ 9.)  When AFF accepted and approved Plaintiff's application, the assignment was complete *under the terms* of the Retail Installment Sales Agreement, which was the required "separate written agreement" stated in the Security Agreement.

Plaintiff argues that the Retail Installment Sales Agreement is merely an agreement to consider a future assignment of a future contract and that establishing a process for an assignment is not an actual assignment or evidence of an assignment.  (Dkt. No. 35 at pp. 4-5.)  However, as explained above, the Security Agreement requires that the assignment occur *under the terms* of a written agreement, not that the actual assignment occur in a written agreement.  The Retail

---

his actually declaration merely states that he was not aware of a mechanism for him to review the document and not that he was actually precluded from reviewing the contract terms.  (*Compare* Dkt. No. 26 (Opp.) at p. 8 *with* Dkt. No. 26-2 (Declaration of Larry Facio) at ¶ 3.)

1    Installment Sales Agreement established the process for an assignment and the actual assignment

2    occurred when AFF approved of Plaintiff's application.  Accordingly, the Court finds that AFF

3    may enforce the arbitration provision in the Security Agreement.

4            **2.    Unconscionability**

5            Plaintiff bears the burden to show that the arbitration provision is procedurally and

6    substantively unconscionable.  *Armendariz v. Found. Health Psychare Serv., Inc.*, 24 Cal. 4th 83,

7    114-15 (2000); *see also Malone*, 226 Cal. App. 4th at 1561.  "Both substantive and procedural

8    unconscionability must be present in order for a court to find a contract unconscionable, but 'they

9    need not be present in the same degree.'"  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210

10   (9th Cir. 2016) (quoting *Armendariz*, 24 Cal. 4th at 114).  The Court evaluates the presence of

11   procedural and substantive unconscionability on a "sliding scale."  *Malone v. Superior Court*, 226

12   Cal. App. 4th 1551, 1561 (2014).  "[T]he more substantively oppressive the contract term, the less

13   evidence of procedural unconscionability is required to come to the conclusion that the term is

14   unenforceable, and vice versa."  *Armendariz*, 24 Cal. 4th at 114.  "The ultimate issue in every case

15   is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances,

16   that a court should withhold enforcement."  *OTO, LLC v. Kho*, 8 Cal. 5th 111, 126 (2019).

17           **i.    Procedural Unconscionability.**

18           Procedural unconscionability "concerns the manner in which the contract was negotiated

19   and the circumstances of the parties at that time.  The element focuses on oppression or surprise."

20   *Gatton v. T-Mobile, USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007) (quotations omitted).

21   "Oppression arises from an inequality of bargaining power that results in no real negotiation and

22   an absence of meaningful choice."  *Id.* (quotations omitted).  "Surprise is defined as the extent to

23   which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form

24   drafted by the party seeking to enforce the disputed term."  *Id.* (quotations omitted).

25           Plaintiff argues that the agreement requiring arbitration was a contract of adhesion because

26   AFF drafted the terms, including the arbitration provision, which AFF offered to Plaintiff on a

27   "take it or leave it basis."  (Dkt. No. 26 at p. 7; Dkt. No. 26-2, ¶ 3.)  Plaintiff also argues the

28   arbitration provision was hidden because it is on pages 5 and 6 of a 7-page agreement and "is

never seen by a consumer during the signing process due to AFF's choice to have a consumer sign only the third and last pages via DocuSign. (Dkt. No. 26 at p. 8; Dkt. No. 34-2, Ex. B.) Notably, while Plaintiff states that Roseville did not show him the agreement or provide him with a copy, he does not state that Roseville precluded him from scrolling through on DocuSign to review the agreement he signed. (Dkt. No. 26-2, ¶ 3.) Additionally, the arbitration provision is clearly delineated in the Security Agreement. There is a separate section entitled pre-dispute resolution procedure which is in all capital letters, bolded and underlined. (Dkt. No. 34-2, Ex. B.) Then there is a section entitled arbitration election which is in all capital letters and in bold. (*Id.*) Therefore, Plaintiff fails to show surprise.

Moreover, the Court notes, where an arbitration provision includes a meaningful opportunity to opt-out, the Ninth Circuit has made clear that arbitration agreements are not procedurally unconscionable. *See Mohamed*, 848 F.3d at 1210 (noting that under Ninth Circuit precedent, the existence of a meaningful right to opt-out renders the arbitration provision procedurally conscionable as a matter of law); *see also Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (finding no procedural unconscionability where plaintiff was given thirty days to decide whether to participate in the arbitration program and mail in a form to opt-out); *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1002-3 (N.D. Cal. 2011) (same).

The agreement here provided Plaintiff thirty days to notify AFF in writing that he rejects the arbitration provision. (Dkt. No. 24-1, Ex. B.) AFF noted this provision in the Security Agreement and pointed out that Plaintiff did not provide any written rejection notice to AFF. (Dkt. No. 24 at p. 3; Dkt. No. 24-1, ¶ 5.) Plaintiff does not dispute the existence of the opt-out provision or argue that it was hidden or buried in the agreement. Instead, Plaintiff merely argues generally that it would be unreasonable to expect a consumer to understand why they could not opt-out with the merchant as opposed to with AFF. (Dkt. No. 26 at p. 11.) Plaintiff also cites to *Gentry v. Superior Court*, 43 Cal. 4th 443, 471-72 (2007), *overruled on other grounds by AT & T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), where the court held the existence of an opt-provision did not render the arbitration agreement procedurally conscionable. The court noted that while the agreement had an opt-out provision, the company emphasized the benefits of arbitration

"without mentioning the many disadvantages to the employee that [the company] had inserted into the agreement" and that company made it "unmistakably clear" that it preferred arbitration, making it unclear that someone in the plaintiff's position would have felt free to opt out.  *Id.* However, Plaintiff fails to point to any facts to show that the opt-out provision was not meaningful as to him.  The opt-out provision was not hidden or buried.  In fact, the provision stated "RIGHT TO REJECT ARBITRATION" in bold, capital letters.  (Dkt. No. 24-1, Ex. B.)  Nor is there any evidence that AFF disproportionately highlighted the benefits of arbitration or pressured Plaintiff into waiving his right to opt out.  While Plaintiff may not have read the Security Agreement with the arbitration provision, there is no indication that he was precluded from doing so.  Therefore, in light of the opt-out provision, the Court finds that Plaintiff fails to demonstrate that the agreement is procedurally unconscionable.

### ii.        Substantive Unconscionability.

Even assuming *arguendo* that Plaintiff demonstrated some procedural unconscionability, he must also demonstrate substantive unconscionability.  Under California law, the concept of substantive unconscionability relates to the actual terms of the arbitration agreement and whether those terms are "overly harsh" or "one-sided."  *Armendariz*, 24 Cal. 4th at 114.

Here, the Court notes that the arbitration is mutual and applies equally to any disputes Plaintiff or AFF may have, with the exception of claims by Plaintiff in small claims court.  (Dkt. No. 34-2, Ex. B)  While Plaintiff acknowledges that "in all likelihood, the consumer will be the Complaining Party and AFF the defending party[,]" Plaintiff argues that the selection of an arbitrator is one-sided in the event that AFF is the Complaining Party.  (Dkt. No. 26 at pp. 11-13.) In that unlikely situation that *AFF* files a *lawsuit* against *Plaintiff* (as opposed to AFF initiating an arbitration proceeding), and *Plaintiff demands arbitration*, then the arbitration demand constitutes consent to AFF's choice of arbitration administer.  (Dkt. No. 24-1, Ex. B; Dkt. No. 26 at p. 11-12.) The chances of this situation arising appears slim.  Also, this provision could easily be stricken without affecting the remainder of the arbitration agreement.  *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273 (9th Cir. 2017) (holding unconscionable clause in arbitration agreement could be "extirpated without affecting the remainder of the paragraph and [was] 'collateral to the

1   main purpose of the contract,' which is to require arbitration of disputes." (quoting *Marathon*

2   *Entm't, Inc. v. Blasi*, 42 Cal. 4th 974, 996 (2008)).

3          Next, Plaintiff argues that the likelihood that the consumer will be the Complaining Party

4   and AFF the defending party renders an otherwise mutual provision non-mutual.  The provision at

5   issue states:

6               If a lawsuit is filed, the Defending Party may elect to demand
                arbitration under this Arbitration Provision of some or all of the
7               Claims asserted in the lawsuit.  To avoid piece-meal Proceedings to
                the extent possible, the Complaining Party must assert in a single
8               lawsuit or arbitration all of the Claims of which the Complaining
                Party is aware and the Defending Party must demand arbitration with
9               respect to all or none of the Complaining Party's Claims.

10  (Dkt. No. 24-1, Ex. B.)  Because this provision applies mutually to both parties, it does not support

11  Plaintiff's argument of substantive unconscionability.

12         Next, Plaintiff argues that the agreement is unintelligible because it requires compliance

13  with a pre-dispute procedure without describing what that procedure is.  (Dkt. No. 26 at pp. 13-

14  14.)  The arbitration provision states:

15              A Proceeding may be commenced after the Complaining Party
                complies with the Pre-Dispute Resolution Procedure.  The
16              Complaining Party may commence the Proceeding either as a lawsuit
                or arbitration by following the appropriate filing procedures for the
17              court or the arbitration administrator selected by the Complaining
                Party in accordance with this Section 2.

18  (Dkt. No. 24-1, Ex. B.)  Section 2 then provides

19              Even if all parties have elected to litigate a Claim in court, you or we
20              may elect arbitration with respect to any Claim made by a new party
                or any new Claim asserted in that lawsuit (including a Claim initially
21              asserted on an individual basis but modified to be asserted on a class,
                representative or multi-party basis), and nothing in that litigation shall
22              constitute a waiver of any rights under this Arbitration Provision.

23  (*Id.*)  While it is not a long or extensive process, the arbitration agreement makes clear that

24  arbitration may be initiated by the complaining party or by the defending party if the action is filed

25  in court.  This provision is not unclear or one-sided.

26         Accordingly, the Court finds that agreement to arbitrate is not substantively

27  unconscionable.  Therefore, the Court GRANTS Defendant's motion to compel arbitration.

28  / / /

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court GRANTS AFF's motion to compel arbitration and STAYS this action pending the arbitration. The Court FURTHER ORDERS that the parties shall file a joint status report regarding the status of the arbitration proceedings every four months hereafter until the arbitration proceedings are completed.

**IT IS SO ORDERED**.

Dated: May 5, 2022



SALLIE KIM
United States Magistrate Judge